UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

ERIN STROHBEHN,

    Plaintiff,

v.

                                                Case No. 16-cv-985

ACCESS GROUP, INC. and
WELTMAN, WEINBERG & REIS CO., L.P.A.,

    Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT WELTMAN, WEINBERG & REIS CO., L.P.A.'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS**

---

Pursuant to Civil L. R. 56, Defendant Weltman, Weinberg & Reis Co., L.P.A., submits the following material facts to which there is no genuine issue of material fact and which entitle this Defendant to judgment as a matter of law:

1.    Erin Strohbehn was formerly known as Erin Patterson. (Dckt. 68, Preamble.)

    **RESPONSE:**     Undisputed.

2.    Plaintiff signed an Access Group student loan application on or about May 15, 2003, seeking a loan of $15,000. (Deposition of Erin Strohbehn ("Strohbehn Dep."), attached as Exhibit C to Affidavit of Kevin Trost ("Trost Aff."), 82, ll. 2-21.)

    **RESPONSE:**     Undisputed.

3.    Plaintiff signed an Access Group student loan application on or about October

28, 2003, seeking a loan of $1,000. (Strohbehn Dep., 84, ll. 18-22.)

      **RESPONSE:**    **Undisputed.**

4.    Plaintiff signed an Access Group student loan application on or about March 29, 2004, seeking a loan of $15,000. (Strohbehn Dep., 86, ll. 12-17.)

      **RESPONSE:**    **Undisputed.**

5.    Plaintiff signed an Access Group student loan application on or about June 15, 2005, seeking a loan of $16,000. (Strohbehn Dep., 87, ll. 12-17.)

      **RESPONSE:**    **Undisputed.**

6.    Plaintiff signed an Access Group student loan application on or about September 19, 2006, seeking a loan of $13,000. (Strohbehn Dep., 88-89, ll. 11-25, 1-2., 23-25.)

      **RESPONSE:**    **Undisputed.**

7.    In each of the student loan applications at issue in this lawsuit, Plaintiff listed her address as N52 W26708 Janet Court, Pewaukee, WI 53072. (Strohbehn Dep., Exs. 10, 12, 14, 16, 18.)

      **RESPONSE:**    **Undisputed.**

8.    Erin Strohbehn had mail delivered to her parents' address at N52 W26708 Janet Court, Pewaukee, WI 53072 when she first took out the student loans with Access Group, Inc., in 2003. (Strohbehn Dep., 53-54, ll. 21-25, 1-10.)

      **RESPONSE:**    **Undisputed.**

9.    From 2003 through 2009, Kentucky Higher Education Student Loan Corporation (KHESLC) serviced the student loans at issue in this lawsuit. (Deposition of Mary

Henry ("Henry Dep."), attached as Ex. E to Trost Aff., 22, ll. 11-17.)

**RESPONSE: Undisputed to the extent that "student loans" refers to Ms. Strohbehn's law school loans. Ms. Strohbehn had undergraduate loans that were not serviced by KHESLC. Disputed to the extent that Ms. Strohbehn believes there is nothing due and owing on the loans so there was nothing to service after the loans were paid in 2007. Strohbehn Dec. ¶¶ 3-8, and Wis. Stat. § 893.05.**

10. From 2009 through 2012, Access Group, Inc., serviced the student loans at issue in this lawsuit. (Dckt. 68, ¶ 17.)

**RESPONSE: Disputed to the extent that Ms. Strohbehn believes there is nothing due and owing on the loans so there was nothing to service after the loans were paid in 2007. Strohbehn Dec. ¶¶ 3-8, and Wis. Stat. § 893.05.**

11. From 2012 through 2016, ACS Education Services ("ACS") serviced the student loans at issue in this lawsuit. (Dckt. 68, ¶¶ 18-19.)

**RESPONSE: Disputed to the extent that Ms. Strohbehn believes there is nothing due and owing on the loans so there was nothing to service after the loans were paid in 2007. Strohbehn Dec. ¶¶ 3-6, and Wis. Stat. § 893.05.**

12. Between May 2003 and January 2016, Plaintiff does not recall if she provided KHESLC, Access Group, Inc., or ACS with notice of any change in her address. (Strohbehn Dep., 56, ll. 5-15.)

**RESPONSE: Disputed to the extent that Ms. Strohbehn stated she did not recall, either way, if she provided her address. Disputed to the degree the deposition transcript does not identify the timeframe as listed in the proposed fact (May 2003 to**

**January 2016). Further disputed as Ms. Strohbehn provided an updated address in January 2016. Access Dep. 171:7-13.**

      13.      On or about April 9, 2007, KHESLC received a payment of $68,051.00 which was applied against Plaintiff's student loan balances. (Henry Dep., 39-40, ll. 5-25, 1-14.)

      **RESPONSE: Undisputed to the extent that "student loans" refers to Ms. Strohbehn's law school loans. Ms. Strohbehn had undergraduate loans that were not serviced by KHESLC.**

      14.      Kentucky Higher Education Student Loan Servicing Corporation received no instructions with the April 9, 2007, payment as to how it was to be applied. (Henry Dep., 48, ll. 21-25.)

      **RESPONSE: Disputed as KHESLC testified that they have no records associated with the details of the payment, and therefore lack the personal knowledge to state what instructions may have come with the payment. Henry Dep. 49:3-16, 20, 48:21-25.**

      15.      Plaintiff did not request a payoff statement from KHESLC, Access Group, Inc., or ACS for any of the student loans at issue in this lawsuit. (Strohbehn Dep., 11-12, ll. 16-25, 1-5.)

      **RESPONSE: Disputed. The citations to the Strohbehn Dep do not reference a payoff statement. The questions posed in the deposition were not in connection with the request for a payoff statement.**

4

16.     Since the lump sum payment, Plaintiff has not made any payments on any of the student loans at issue in this lawsuit. (Dckt. 68, ¶ 14, 32.)

**Response:    Undisputed.**

17.     Following the completion of law school, Plaintiff sought to consolidate her student loans. (Strohbehn Dep., 9-10, ll. 23-25, ll. 1-8.)

**Response:    Undisputed.**

18.     Plaintiff believes she sought consolidation through a company she located on the internet, but is unaware of the identity of this company. (Strohbehn Dep., 112, ll. 4-14.)

**Response:    Disputed, as the identify of this consolidation company was ascertained during the course and scope of the discovery process. Defendant WWR referenced the consolidation company in their reply brief filed last week. Strohbehn Dec., ¶¶3-8**

19.     The lump sum payment extinguished two of the loans and left relatively small balances on the three remaining loans. (Henry Dep., 53, ll. 4-9.)

**RESPONSE: Disputed, as KHESLC testified that they had standardized policies on how to apply payments but that they weren't sure on how the payments were applied across all 5 loans. Henry Dep., 93:7-15. Further disputed as Ms. Strohbehn paid off what she was told was due and owing. Dkt 104, ex. 14; see also DeLadurantey dec., Exhibit A (Saunders report), p. 8-11; Strohbhen Dec. ¶¶3-8.**

20.     The lump sum payment advanced Plaintiff's next due date on the three

4

remaining loans to early 2016. (Deposition of Melissa Scott, attached as Ex. A to Trost Aff., 179-80, ll. 19- 24, 1-9; Deposition of Julienne Sullivan, attached as Ex. B to Trost Aff., 53, ll. 8-16.)

**RESPONSE: Disputed, as KHESLC testified that they had standardized policies on how to apply payments but that they weren't sure on how the payments were applied across all 5 loans. Henry Dep., 93:7-15. Access Group has not offered any mathematical calculation on how they calculated how far into the future payments were advanced, nor has KHESLC. Henry Dep, 93:7-15, 101:1-102:12. Furthermore the "prepaid status" was not in the contracts or ever disclosed to Ms. Strohbehn. Henry Dep, 98:8-24, 127:9-18, 129:3-11.**

21. Access Group, Inc., referred Plaintiff's three outstanding student loans to Weltman for collection on or about August 2, 2016, via electronic data transfer. (Deposition of Eileen Bitterman ("Bitterman Dep."), attached as Exhibit D to Trost Aff., 43, ll. 17-19.)

**RESPONSE: Undisputed.**

22. Weltman performed its standard scrubs of the account information to confirm the debtor's biographical information and ensure compliance with federal laws. (Bitterman Dep., 23- 24, ll. 11-25, 1-13.)

**RESPONSE: Undisputed, to the degree that the "scrubs" refer to their attempt to verify if Ms. Strohbehn had filed for bankruptcy. Disputed to the degree the proposed facts imply that the "scrub" is something that validated the debt, or was designed to**

**verify if previous or current litigation had occurred in connection with the debt.**

23. Weltman obtained a credit score, which a product offered for sale by credit reporting agencies, from a credit reporting agency. (Bitterman Dep., 100, ll. 3-22.)

**RESPONSE: Disputed. A credit inquiry by Defendant WWR appeared on Ms. Strohbehn's credit report. Disputed to the degree that a "credit score" is part of a "credit file." 15 U.S.C. § 1681g(f). A credit score is based on contents of the credit file, therefore the file would have to be accessed in order for a score be generated.**

24. Weltman never requested or obtained a credit report on Plaintiff. (Bitterman Dep., 98, ll. 11-22.)

**RESPONSE: Disputed. A credit inquiry by Defendant WWR appeared on Ms. Strohbehn's credit report. Disputed to the degree that a "credit score" is part of a "credit file." 5 U.S.C. § 1681g(f). A credit score is based on contents of the credit file, therefore the file would have to be accessed in order for a score be generated.**

25. Weltman sent three debt validation letters dated August 6, 2016, to the address uploaded by Access Group, Inc., for Plaintiff's accounts. (Bitterman Dep., 19, ll. 20-23.)

**RESPONSE: Undisputed to the degree that three letters were sent to and directed at Plaintiff, at an address in WWR's system.**

26. Each debt validation letter contained the disclosures required by the FDCPA. (Bitterman Dep., Exs. 5 – 7.)

**RESPONSE: Disputed to the degree this proposed fact is so vague as to be**

6

impossible to answer and any "disclosures required by the FDCPA" is a legal conclusion.

27. Plaintiff never received or reviewed the debt validation letters from Weltman. (Strohbehn Dep., 114-15, ll. 10-25, 1.)

**RESPONSE: Disputed. The deposition transcript cited talks about the personal receipt of the letters. There is no mention of "review" of the letters. Plaintiff was aware of the letters, aware they were directed to her (at her attorney's address, as required by the FDCPA), and was aware of their contents. Second Strohbehn Dec. ¶ 44.**

28. Plaintiff never spoke with any representative of Weltman on the phone. (Strohbehn Dep., 115, ll. 9-12.)

**RESPONSE: Undisputed.**

29. On August 12, 2016, Weltman closed the three accounts for Strohbehn at Access Group's request and undertook no further activities. (Bitterman Dep., 75, ll. 4-19.)

**RESPONSE: Undisputed.**

30. Access Group mailed Plaintiff a prepaid status letter dated May 5, 2013, that advised Plaintiff of the prepaid status of her loans, when the next payment was due, and the loan amount outstanding. (Deposition of Melissa Scott, 178-79, ll. 22-24, 1-13.)

**RESPONSE: Disputed. The deposition testimony is from an Access Group witness reading account notes and testifying about their corporate knowledge of what those notes indicate. Because Access Group did not make those notes, they cannot testify as to their accuracy. Furthermore, there is no evidence or facts sufficient to show**

5

compliance with the "mailbox rule." This evidentiary issue is further addressed in Plaintiff's reply brief. Dkt. 132, pp. 1-2.

## PLAINTIFF'S PROPOSED ADDITIONAL MATERIAL FACTS

31. Any loans between Access Group, Inc. and Ms. Strohbehn were private student loans, and not federal student loans. Declaration of Erin Strohbehn, Dkt. 91, ¶3.

32. Ms. Strohbehn entered into the loans with Access Group in the years of 2003-2006. Declaration of Heidi N. Miller, Dkt. 93, ¶¶3-7.

33. Pursuant to the terms of the contract, Ms. Strohbehn had the right to pre-pay any loan without penalty. Declaration of Heidi N. Miller, Dkt. 93, ¶¶3-7.

34. While Ms. Strohbehn as student at Marquette University Law School, Ms. Strohbehn was not required to make any payments towards the loans. Declaration of Heidi N. Miller, Dkt. 93, ¶¶3-7.

35. After graduation in 2006, Ms. Strohbehn was employed as a lawyer with Gimbel, Reilly, Guerin, & Brown, LLP where she is currently a litigation partner. Declaration of Erin Strohbehn, Dkt. 91 ¶4.

36. After graduation and employment, Ms. Strohbehn was offered an "EZ-Pay" repayment plan on her loans with Access Group. Declaration of Heidi N. Miller, Dkt. 93, ¶9.

37. Ms. Strohbehn consented to the schedule of payments offered by Access Group, with her first payment being due in April, 2007. Declaration of Heidi N. Miller, Dkt. 93, ¶9.

38. Pursuant to the terms of the contract, Ms. Strohbehn was to make a minimum monthly payment of $50 on each individual loan. This minimum payment existed even with the EZ-

Pay agreement. Declaration of Heidi N. Miller Dkt. 93 ¶¶3-7 and 11 (Deposition of Access Group, Inc. 119:6-14).

39. Payments were due on each individual loan, monthly, starting in April, 2007. Declaration of Miller, Dkt. 93, ¶¶3-7, 9.

40. On April 9, 2007, Ms. Strohbehn made a lump sum payment of $68,051 (hereinafter "lump sum payment") to Access. Declaration of Heidi N. Miller, Dkt, 93, ¶8.

41. This lump some payment was made through a consolidation process with a third party lender. Declaration of Erin Strohbehn, Dkt. 91, ¶5.

42. The lump sum payment was the last payment made on Ms. Strohbehn's loans. Declaration of Erin Strohbehn. Dkt. 91, ¶6.

43. On May 15, 2003 Ms. Strohbehn executed a promissory note with Defendant Access in the amount of $15,000. This promissory note has been referred to as "Loan A" by the parties. Declaration of Heidi N. Miller, Dkt. 93, ¶3.

44. Access contends that on April 9, 2007 after the lump sum payment was applied, Ms. Strohbehn still owed on Loan A. Declaration of Heidi N. Miller, Dkt. 93, ¶8.

45. On October 28, 2003 Ms. Strohbehn executed a promissory note with Defendant Access in the amount of $1,000. This promissory note has been referred to as "Loan B" by the parties. Declaration of Heidi N. Miller, Dkt. 93, ¶4.

46. Loan B was deemed to be paid in full by Access after the lump sum payment was applied. Declaration of Heidi N. Miller, Dkt. 93, ¶8.

47. On March 29, 2004 Ms. Strohbehn executed a promissory note with Defendant Access in the amount of $15,000. This promissory note has been referred to as "Loan C" by the parties. Declaration of Heidi N. Miller, Dkt. 93, ¶5.

7

48. Access contends that on April 9, 2007 after the lump sum payment was applied, Ms. Strohbehn still owed on Loan C. Declaration of Heidi N. Miller, Dkt. 93, ¶8.

49. On June 15, 2005 Ms. Strohbehn executed a promissory note with Defendant Access in the amount of $16,000. This promissory note has been referred to as "Loan D" by the parties. Declaration of Heidi N. Miller, Dkt. 93, ¶6.

50. Access contends that on April 9, 2007 after the lump sum payment was applied, Ms. Strohbehn still owed on Loan D. Declaration of Heidi N. Miller, Dkt. 93, ¶8.

51. On September 19, 2006 Ms. Strohbehn executed a promissory note with Defendant Access in the amount of $13,000. This promissory note has been referred to as "Loan E" by the parties. Declaration of Heidi N. Miller, Dkt. 93, ¶7.

52. Loan E was deemed to be paid in full by Access after the lump sum payment was applied. Declaration of Heidi N. Miller, Dkt. 93, ¶8.

53. Pursuant to the terms of the contracts, if there was any amount owing after the lump sum payment, Ms. Strohbehn was required to pay a minimum amount of $50/month/loan on any balance owed. Declaration of Heidi N. Miller, Dkt. 93, ¶¶3-7 and ¶ 11 (Deposition of Access Group, Inc. 119:6-14).

54. If there had been an amount owed on any loan to Access, Ms. Strohbehn would have been in contractual default by not making a May 2007 payment on the loans with any alleged balances. Declaration of Heidi N. Miller, Dkt. 93, ¶¶3-7.

55. The contracts between Access Group, Inc. and Ms. Strohbehn do not state that payments over and above the required monthly payment will "advance" the due-date of the next contractual payment due. Declaration of Heidi N. Miller, Dkt. 93, ¶¶3-7.

56. The contracts state that Ms. Strohbehn had "the right at any time to pay in advance the unpaid balance due." Declaration of Heidi N. Miller, Dkt. 93, ¶¶3-7.

57. Access Group, Inc. has an internal policy to "advance" the due-date of the next contractual payment due, when the consumer pays over or above the required monthly payment. Declaration of Heidi N. Miller, Dkt. 93, ¶10.

58. This "advance" of due dates is contrary to the plain language of the contracts between the parties and the language of Wis. Stat. § 421.301(1). Declaration of Heidi N. Miller, Dkt. 93, ¶¶3-7., Wis. Stat. § 421.301(1).

59. The consolidation company that Ms. Strohbehn hired in 2007 to consolidate her loans was CIT Group, Inc. Second Strohbehn dec. ¶ 6.

60. Ms. Strohbehn paid through consolidation $68,051 on the loans because that is what she was told she owed at the time. Second Strohbehn dec. ¶¶ 3-8, DeLadurantey Dec. Dkt. 131-1, Exhibit A (Saunders report) p. 8-11.

61. The June 20, 2016 copy of Ms. Strohbehn's credit file shows two inquires from WWR dated August 3, 2016. Miller dec, Exhibit B.

62. Access Group has no basis in fact for its cross-claim against Weltman, Weinberg, & Reis. Access Dep. 104:18-105:10.


Dated this 2nd day of October, 2017.

s/ Nathan E. DeLadurantey
Nathan E. DeLadurantey, 1063937
Heidi N. Miller, 1087696
DeLadurantey Law Office, LLC
330 S. Executive Drive, Suite 109
Brookfield, WI 53005
Telephone: (414) 377-0515, Fax: (414) 755-0860
Email: nathan@dela-law.com

Email: heidi@dela-law.com
ATTORNEYS FOR PLAINTIFF