# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ERIN STROHBEHN,

                    Plaintiff,

v.                                                      Case No. 16-CV-985-JPS

ACCESS GROUP INC. and
WELTMAN WEINBERG & REIS CO.                    **ORDER**
LPA,

                    Defendants.

## 1.     INTRODUCTION

In 2003, Plaintiff obtained students loans to pay for law school. In 2007, after she graduated and found work, she attempted to pay them off in one large payment. She came close to doing so, but through an accounting error (whether hers or otherwise), a small balance remained owing. The balance sat, unpaid, for almost a decade. In 2016, Defendants began employing various means to attempt collection of the balance. Plaintiff claims their efforts violated the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), the Wisconsin Consumer Act ("WCA"), and Wisconsin's privacy laws.

Each party has moved for summary judgment, and each motion is fully briefed. For the reasons explained below, Plaintiff's motion will be granted, Defendant Access Group, Inc.'s ("Access") motion will be granted in part, and Defendant Weltman, Weinberg & Reis, Co., L.P.A.'s ("WWR")

motion will be granted in part and denied in part.[1] The Court will also address Plaintiff's motions to strike, filed in mid-August 2017.

## 2.    MOTIONS FOR SUMMARY JUDGMENT

### 2.1    Standard of Review

Federal Rule of Civil Procedure ("FRCP") 56 states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

---

[1]In the course of briefing her motion for summary judgment, Plaintiff filed an expedited motion for an extension of time to file her reply. (Docket #124). However, Plaintiff's motion was ill-timed, coming too late for the Court to take any action. Plaintiff's motion indicated that it was opposed by Access, and thus Access had seven days to submit its response. Civil L. R. 7(h). That seventh day was Plaintiff's reply deadline, so she had no choice but to file her reply anyway, or risk having the reply be stricken as tardy. The expedited motion will, therefore, be denied as moot.

## 2.2    Factual Background

Though the parties have submitted voluminous factual material, only a relatively small portion of it is relevant to the Court's disposition.[2] In the interest of brevity, the Court has limited its factual recitation accordingly. It notes the parties' disputes where appropriate.[3]

From 2003 to 2006, Plaintiff obtained five separate student loans through Access to help pay for law school. Plaintiff was loaned a total of $60,000, with the individual loans ranging from $1,000 to $16,000. Though they were disbursed at separate times, all were subject to the same contractual terms. The loan agreements provided that Plaintiff had two repayment options: "either 1) consecutive monthly payments until all interest and princip[al] [was] paid over 240 months or 2) minimum monthly payments of $50 (that might result in paying off the loan before the expiration of 240 months)." (Docket #146 at 7). The agreements further stated that Plaintiff had "the right to prepay all or any part of" the loans "at any time without penalty." *See, e.g.*, (Docket #93-3 at 4).

From 2003 to 2009, the servicer for her loans was Kentucky Higher Education Student Loan Servicing Corporation ("KHESLC"). Plaintiff's first payment on her loans was due in April 2007. When that time came, Plaintiff attempted to consolidate and pay off her loans through a loan

---

[2]The parties' factual briefs are replete with immaterial facts and even less material disputes. This has unnecessarily increased the burden on the Court, which is duty-bound to wade through their lengthy and largely irrelevant submissions. The Court views this as a symptom of the wasteful, nit-picking, never-surrender approach all parties have applied to this otherwise relatively straightforward case. The Court trusts that this unnecessarily antagonistic approach will not continue through the conclusion of this matter.

[3]Plaintiff filed two motions to seal certain documents marked confidential by Access. (Docket #90 and #134). The Court will grant those motions.

consolidation company called CIT Group, Inc. ("CIT"). Through CIT, Plaintiff paid $68,051 in a single lump sum to pay off all five loans at once (the "Consolidation Payment"). Despite her belief that the Consolidation Payment would eliminate her loan balances entirely, fees and interest had raised Plaintiff's total loan balance to approximately $73,000. Thus, the Consolidation payment only satisfied two of the loans, leaving a total balance on the three remaining of approximately $5,000.

Plaintiff did not send any instructions on how to apply the Consolidation Payment. Without such instruction, KHESLC applied the payment in accordance with its own internal policies. KHESLC's policy provided that prepayments, such as the Consolidation Payment, would be used to pay off any currently due fees, interest, and principal. Any excess funds would then be applied to successive future monthly payments until the funds ran out. This would, in effect, postpone the due date for Plaintiff's next required monthly payment in accordance with the amount of excess funds. In Plaintiff's case, the Consolidation Payment was so large that Plaintiff would remain in "prepaid" status until January 2016. Plaintiff notes that there was no mention in the agreements of postponing the due date of future payments as provided in KHESLC's policy. Rather, the agreements provided for regular monthly payments of at least $50 so long as a balance remained outstanding, which has always been the case.

Access began servicing Plaintiff's loans directly from June 2009 to March 2012. Upon taking over from KHESLC, Access sent Plaintiff written materials about her loans. These explained Access' prepayment policy, which was substantially similar to that employed by KHESLC. Defendants maintain that each servicer repeatedly sent Plaintiff billing statements which indicated that her loans were prepaid until January 2016 and that she

did not owe any monthly payments until that time. Plaintiff disputes receiving many of these notices, and reiterates that the statements could not retroactively change the terms of the loan agreements.

In March 2012, Access brought in ACS Education Services ("ACS"), also known as Xerox, to service the loans. The conduct which directly underlies Plaintiff's claims began in 2016. When Plaintiff's prepaid status ended in January 2016, ACS began to report the debts as delinquent to the three major credit bureaus, also known as credit reporting agencies ("CRAs"). ACS reported Plaintiff's debts in accordance with their servicing duties to Access. Each debt was reported as a separate tradeline on her credit. The information ACS used to create the tradelines was provided by Access, and Access warranted to ACS that the information was accurate.

On March 3, 2016, Plaintiff sent letters to the CRAs disputing the entries regarding her student loans. She claimed that the debts should not be reported as delinquent because the statute of limitations applicable to them had expired. *See, e.g.,* (Docket #136-5). She ended up submitting nine such disputes. Plaintiff's disputes were sent to ACS, as it was the entity that had been reporting the debts. When ACS responded to Plaintiff's disputes, it used the information in its records which had been supplied by Access. ACS responded that its reporting activity was accurate, and the tradelines were not deleted.

Access itself did not receive the notices from the CRAs and did not otherwise know about the disputes.[4] The parties dispute whether Access is

---

[4]Plaintiff alleges that Access should be held responsible for the handling of the disputes because it could enter ACS' computer system, and ACS was its agent. (Docket #140 ¶ 60). Even if true, this is not evidence that Access itself received the disputes, had any actual notice that they existed, or that it had any role in responding to them.

nonetheless responsible for ACS's reporting activity. Plaintiff claims that ACS acted largely at Access' direction, such that ACS should be considered Access' agent. Access counters that although it initially hired ACS to service Plaintiff's loans, any reporting activity and dispute resolution was conducted entirely by ACS with reference to its own internal policies and procedures. As discussed below, the Court must address this disagreement. *See infra* Part 2.3.3.

From January to May 2016, Access called Plaintiff approximately five times. Plaintiff does not describe the conversations except to say that Access "stated I owed them money." (Docket #136 at 2). In August 2016, Access hired WWR to assist its collection efforts. As part of opening Plaintiff's file, WWR obtained Plaintiff's credit score. Plaintiff says that WWR's credit inquiry damaged her credit rating. WWR sent a number of collection letters to Plaintiff's attorneys (she had previously told Access that all contact should go through them). Soon afterward, Access told WWR to cease its collection activity.

## 2.3 Analysis

Plaintiff asserts six causes of action in her operative pleading, the Second Amended Complaint. (Docket #68). As of the date of this Order, the claims are as follows:

> Count One – Access violated the FCRA by providing inaccurate information to the CRAs and by failing to conduct a reasonable investigation into Plaintiff's dispute regarding that information. Plaintiff alleges these acts were done willfully, thereby entitling her to increased damages. *Id.* ¶¶ 43-48.

Count Two – Access violated the Wisconsin Consumer Act ("WCA") by attempting "to collect on paid bills." *Id.* ¶¶ 49-51, 53-54.[5]

Count Three – WWR violated the FDCPA by attempting "collection on paid bills." *Id.* ¶¶ 55-60.

Count Four – WWR violated the WCA by "attempt[ing] to collect on paid bills." *Id.* ¶¶ 61-65.

Count Five – WWR violated the FCRA by obtaining a copy of Plaintiff's credit report, an act which can depress the target's credit score, without justification. *Id.* ¶¶ 66-70.

Count Six – WWR violated Plaintiff's right to privacy, codified in Wis. Stat § 995.50, by pulling Plaintiff's credit report. *Id.* ¶¶ 71-75.

The other relevant pleading is Access' Answer to the Second Amended Complaint. Therein, Access alleges a cross-claim against WWR, stating that WWR should bear sole liability for any violations of Plaintiff's rights. (Docket #77 at 10). WWR denies this. (Docket #79).

Plaintiff seeks partial summary judgment not on any particular claim, but on an overarching legal issue. Each Defendant seeks dismissal of all of the claims arrayed against them. The Court will address the parties' motions separately below.

### 2.3.1 Plaintiff's Motion

Plaintiff seeks partial summary judgment on the issue which underlies each of her claims: has the statute of limitations run on her loans, thereby extinguishing the debts and rendering Defendants' collection

---

[5]In her Second Amended Complaint, Plaintiff pleads that Access' WCA violation also included "lying about [Plaintiff] on her credit file[.]" (Docket #68 ¶ 52). She has withdrawn that portion of the WCA claim in response to Access' motion for summary judgment. (Docket #139 at 24 n.10).

activity is improper?[6] The applicable statute of limitations in Wisconsin is six years. Wis. Stat. § 893.43. Unlike most states, the expiration of the statute of limitations in Wisconsin means that not only is the creditor barred from filing suit to recover the debt, the debt itself is treated as eliminated. *Id.* § 893.05; *First Nat'l Bank of Madison v. Kolbeck*, 19 N.W.2d 909 (Wis. 1945); *Pantoja v. Portfolio Recovery Assoc., LLC*, 852 F.3d 679, 684 (7th Cir. 2017) ("We recognize that most states (though not Wisconsin, in this circuit) treat a debt as a debt even after the statute of limitations has run so that it cannot be legally enforced, at least if the defendant appears and asserts the affirmative defense. *See, e.g., Buchanan* [*v. Northland Group, Inc.*], 776 F.3d [393,] 396–97 [(7th Cir. 2015)] (recognizing general rule); *cf.* Wis. Stat. § 893.05 (when statute of limitations expires, "the right is extinguished as well as the remedy").". A Wisconsin breach of contract action becomes viable, and thus starts the clock on the statute of limitations, at the time of breach, not at the time the breach is discovered. *CLL Assoc. Ltd. P'ship v. Arrowhead Pac. Corp.*, 497 N.W.2d 115, 117 (Wis. 1993).

Applying these principles to the facts of this case, Plaintiff argues that her debts were eliminated prior to Defendants' complained-of collection activity beginning in January 2016. The Court follows her line of

---

[6]As hinted in the Court's recitation of the facts, Plaintiff's complaint was initially premised on two underlying facts which could independently support her claims. First, Plaintiff asserted that she paid off her loans entirely in 2007, and thus owed Access nothing during Defendants' complained-of collection activity. *Id.* ¶¶ 14, 31. Second, even if Plaintiff did actually owe Access money, she breached the loan agreements long ago, and therefore the statute of limitations has expired on the debts. *Id.* ¶ 32. Plaintiff appeared to abandon the first theory during summary judgment briefing, and confirmed that fact after briefing was complete by filing a separate notice to that effect. (Docket #149). She now proceeds only on the second theory.

reasoning. For the three remaining loans with balances, each loan agreement is materially identical. The parties agreed that Plaintiff was required to pay consecutive monthly payments, which were calculated from the remaining principal and any accrued interest or fees, until the loans were paid. Plaintiff also had the option to prepay her loans, but the agreements provide that she would always owe at least $50 per month (if there was any balance at all, of course).

Plaintiff's first monthly payment was due in April 2007. Instead of making any monthly payments, Plaintiff made the Consolidation Payment. This was her first and last payment towards the loans. Even though the Consolidation Payment paid off two of the loans entirely, and the bulk of the remaining three, there were still balances due. Though these balances would likely result in an exceedingly small monthly payment (as calculated from the remaining principal and interest), the agreements provided that Plaintiff must pay no less that $50 per month. When Plaintiff failed to make a payment in May 2007, she contends that she breached the loan agreements. After six years—approximately May 2013—the statute of limitations expired on the debts. According to Plaintiff, this means that Defendants have sought to recover non-existent debts.

Plaintiff's motion, then, requests the Court's interpretation of the loan agreement. Such matters are appropriate for disposition on summary judgment. *Tufail v. Midwest Hospitality, LLC*, 833 N.W.2d 586, 592 (Wis. 2013). Plaintiff's position is persuasive and is grounded in the unambiguous terms of the agreements. *Id.* ("[U]nambiguous contract language controls contract interpretation. Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms.") (citation and quotation omitted). She is entitled to summary judgment that

she was in breach as of May 2007, and that any right to recover the debt expired in May 2013.

Defendants' arguments to the contrary are unavailing. First, Access contends that Plaintiff did not breach the loan agreements until January 2016. When it received the Consolidation Payment, KHESLC applied its prepayment policy, functionally similar to Access' policy, which ultimately postponed Plaintiff's next monthly payment due date until January 2016. (hereinafter referred to as the "advancing due date" policy). As a result, Plaintiff did not breach the loan agreements until she failed to make a payment in 2016. From 2007 to 2016, KHESLC, Access, and ACS each sent Plaintiff monthly statements reflecting that her total amount due each month was zero or that she was in "pre-paid" status.

WWR joins Access' position and offers an additional related argument. The loan agreements provide that Plaintiff has "the right to prepay all or any part of [her] loan at any time without penalty." *See, e.g.*, (Docket #93-3 at 4). The agreements do not define "prepay" or explain how a prepayment would be applied. According to Webster's, the definition of "prepay" is to "pay in advance." (Docket #125 at 6). The advancing due date policy, in WWR's view, is consistent with the dictionary definition of "prepay."

Defendants' position fails to harmonize all relevant provisions of the agreements. *Md. Arms Ltd. P'ship v. Connell*, 786 N.W.2d 15, (Wis. 2010) ("When possible, contract language should be construed to give meaning to every word, avoiding constructions which render portions of a contract meaningless, inexplicable or mere surplusage.") (quotation omitted). Defendants ignore the express $50 per month minimum payment provision, and seek to imply an advancing due date provision which is not

found in the loan agreements. The Court will not read such a provision into the agreements when one could have easily been included. Further, the servicers' internal advancing due date policies, their written materials explaining those policies, and their letters to Plaintiff could not change this fact. *See, e.g.*, (Docket #93-3 at 4) (the agreements can only be modified by a joint writing). The agreements clearly provide that Plaintiff will always owe at least $50 per month, notwithstanding the amount due reflected on her monthly statements. The servicers' misinterpretation of the agreements, and their belief that Plaintiff owed nothing in May 2007, lies solely with them, as does their poor draftsmanship.[7]

Defendants' secondary argument is even less persuasive. Defendants maintain that because the loan agreements chose Ohio law to govern them, and Ohio's applicable statute of limitations is fifteen years, Plaintiff's debts are still ripe. R.C. § 2305.06 (Ohio's current limitations period on contracts is eight years, but prior to 2012, it was fifteen); *Rudolph v. Viking Int'l Res. Co., Inc.*, No. 15-CA-26, 2017 WL 3701170, at *13-14 (Ohio Ct. App. Aug. 11, 2017) (applying the fifteen-year period to cause of action

---

[7]WWR claims that Plaintiff's position "lacks basic logic:"

> Under Plaintiff's theory, nearly anyone who owes money under a loan agreement could avoid payment responsibilities by making a pre-payment large enough to cover just over six years of payments. Then, when the six-year period since the last payment lapsed, the debtor could claim to be free and clear of the debt because of the statute of limitations. If such a scenario had any grounding in reality, creditors would not permit large lump sum pre-payments on loans.

(Docket #99 at 12). WWR's position relies on an assumption that other creditors will 1) write contracts which lack an advancing due date provision, or 2) fail to understand the terms of the contracts they drafted. The Court is not terribly concerned with either scenario.

which accrued prior to 2012). Plaintiff's student loans, however, are considered consumer transactions which are afforded certain protections by the Wisconsin Consumer Act ("WCA"). As relevant here, the WCA invalidates any attempt to choose non-Wisconsin law to govern a consumer transaction. Wis. Stat. § 421.201(10)(a).

Access counters that the WCA does not apply to consumer credit transactions exceeding $25,000. *Id.* § 421.202(6). Plaintiff's total loan disbursement was $60,000. Plaintiff responds that each of her five loans, none exceeding $25,000, was a separate transaction. She is correct for two reasons. First, as a factual matter, Plaintiff's loans were disbursed at different times, in different amounts, and under separate promissory notes. Indeed, Access itself treated the loans as separate. Second, Access provides no precedent to convince the Court otherwise. Its only citation is to an unpublished, *per curiam* decision of the Wisconsin Court of Appeals, which according to Wisconsin law means that it is not precedent and does not even hold persuasive value. Wis. Stat. § 809.23(3); *Riverside Fin., Inc. v. Rogers*, No. 2013-AP-2388, 2015 WL 4578903 (Wis. Ct. App. July 31, 2015).[8]

---

[8]Access misreads *Riverside*, in any event. There, the parties *agreed* that twelve separate loans, each less than $25,000 and spaced out over eight years, constituted one transaction. *Riverside*, 2015 WL 4578903, at *3. This was, of course, a poor strategy on the consumer's part. Connecting the series of loans into a unified whole was the only way the Court could (and in fact, did) find that the entire value of the transaction exceeded $25,000 ($34,332.06, to be exact), and thus fell outside the WCA's purview. *Id.* at *3-4. The court specifically noted that

> [o]ur acceptance of the parties' agreement that all twelve loans constituted a single transaction should not be considered an endorsement of that position. However, because no argument was made to the contrary in the circuit court or this court, we will not interfere with Rogers's chosen strategy.

*Id.* at *3 n.9. The remaining discussion in *Riverside*, however it might seem to apply to the instant case, is clearly distinguishable because it rests on the court's

Access' final argument contests one of the legal propositions the Court earlier stated: that the expiration of the statute of limitations in Wisconsin extinguishes the debt entirely. As support, Access cites to one opinion: Judge Griesbach's summary judgment order in *Herrell v. Chase Bank USA, N.A.*, issued on October 24, 2016. 218 F. Supp. 3d 768. Upon a close reading of *Kolbeck*, Judge Griesbach concluded that continuing to report a stale debt to the CRAs did not violate the FCRA. *Id.* at 792. He found that this accorded with the purpose of credit reporting, which is focused on providing insight to potential creditors; listing an unpaid debt provides useful information, whether or not the debt is actually collectable. *Id.* No matter whether this Court would agree with Judge Griesbach's reasoning, it is constrained to follow the Seventh Circuit's command. As stated in *Pantoja*, a decision not available to Judge Griesbach when he issued *Herrell*, Wisconsin does not treat "a debt as a debt even after the statute of limitations has run[.]" 852 F.3d at 684. This Court is not at liberty to disagree.

Plaintiff's motion for summary judgment must, therefore, be granted. Again, she did not seek a ruling in her favor as to any particular claim or count, so the Court will not issue one. Nonetheless, the invalidity of her debts is now finally established.

### 2.3.2   WWR's Motion

WWR seeks summary judgment on all claims pending against it. This includes Counts Three, Four, Five, and Six of the Second Amended Complaint, as well as Access' cross-claim. The only grounds asserted for

---

acceptance of the parties' agreement. In our case, the parties have made abundantly clear that they agree on nothing, much less on this issue.

dismissing Plaintiff's claims are 1) the loans were not paid off, and 2) the statute of limitations has not run on them. (Docket #99 at 9-12). The first has already been conceded by Plaintiff, but the second has been conclusively established in Plaintiff's favor. Thus, the Court must deny WWR's motion as it relates to Plaintiff's claims. As to Access' cross-claim, Access failed to respond to WWR's motion in any way. Without opposition from Access, its cross-claim against WWR will stand dismissed. (Docket #77 at 10).[9]

### 2.3.3 Access' Motion

Like WWR, Access seeks dismissal of all outstanding claims against it. For Access, these are Counts One and Two of the Second Amended Complaint. With the granting of Plaintiff's motion, a portion of Access' arguments are rendered moot. Unlike WWR, Access presents some arguments which are independent of the validity of the underlying debts. These are meritorious and require dismissal of Counts One and Two.

Recall that Count One alleges that Access violated the FCRA "by failing to conduct a reasonable investigation with respect to the disputed information, by failing to review all relevant information available, and by failing to update [Plaintiff]'s credit report to accurately reflect that she did not owe a balance." (Docket #68 ¶ 45). Plaintiff cites 15 U.S.C. § 1681s-2(b) as the particular FCRA provision violated by this conduct. *Id.* Section 1681s-2 is titled "Responsibilities of furnishers of information to consumer reporting agencies." A "furnisher" of credit information is one who provides the actual credit information to a CRA, generally a creditor, servicer, or collection agency. Subpart (b) establishes certain duties for

---

[9]For what it is worth, Plaintiff agrees that the cross-claim should be dismissed. (Docket #137 at 13-14).

furnishers when they receive notice that a consumer disputes information the furnisher provided to a CRA. It states, in pertinent part:

> After receiving notice pursuant to section 1681i(a)(2) of this title [from a CRA] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the [furnisher] shall—
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the [CRA];
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis[.]

15 U.S.C. § 1681s-2(b)(1).

The parties assume that ACS and Access qualify as "furnishers." It is undisputed that from March 2012 onward, ACS alone was actually communicating Plaintiff's credit information on the student loans to the CRAs; that is what Access hired ACS to do. Plaintiff also does not contest that her disputes to the CRAs were communicated only to ACS, which was the only entity to respond to the disputes.

Under the plain language of Subpart (b), Access cannot be liable with respect to Plaintiff's disputes. A duty to investigate the accuracy of credit information is only triggered when a furnisher receives notice of a dispute from a CRA. *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). Access did not directly furnish the information Plaintiff sought to dispute. Access also never received any notice of Plaintiff's disputes from a

CRA. Rather, those went directly to the furnisher, ACS. Access thus had no duty to comply with Subpart (b) because such a duty never arose.

Plaintiff acknowledges as much, but argues that FCRA liability should nonetheless be imposed on Access via an agency theory. However, Plaintiff supplies no direct support for such a theory. The FCRA itself does not impose additional dispute resolution duties beyond the furnisher itself or otherwise provide for vicarious liability. Plaintiff's only citations are to cases which conclude that vicarious liability should be imposed on a furnisher when one of its own employees violates the FCRA in some manner, usually by obtaining someone's credit information for an improper purpose. *See Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965-66 (6th Cir. 1998); *Smith v. Sears, Roebuck & Co.*, 276 F. Supp. 2d 603, 606 (S.D. Miss. 2003); *Owens v. Dixie Motor Co.*, No. 5:12-CV-389, 2014 WL 12703392, at *9-11 (E.D. N.C. Mar. 31, 2014).

Neither party cites a case imposing vicarious liability running from a third-party loan servicer back to the creditor for violation of Subpart (b) duties. The Court itself has been unable to locate helpful precedent on the issue. In the absence of controlling, contrary authority, and based on the plain language of Subpart (b), the Court concludes that Access should not be subject to Subpart (b) liability based on ACS' conduct.[10] Access is entitled to summary judgment on Count One.[11]

---

[10]The parties' factual disputes about whether ACS was indeed Access' agent are thus irrelevant. In other words, the Court cannot weigh the factual propriety of Plaintiff's agency theory without first determining that vicarious liability is even cognizable for her Subpart (b) claim. Plaintiff has not made the latter showing, and so the Court cannot reach the former.

[11]Plaintiff cannot complain that this result is unjust. In July, Plaintiff attempted to amend her complaint to add a claim against ACS. (Docket #57). The

Access also seeks dismissal of the WCA claim in Count Two. Count Two invokes Wis. Stat. § 427.104(1)(h) of the WCA, which prohibits harassing conduct in the collection of a consumer debt. As stated in the Second Amended Complaint, Plaintiff alleges that Access harassed her by both "continu[ing] to collect on paid bills," and by "[l]ying about [Plaintiff] on her credit file[.]" (Docket #68 ¶¶ 51-52). In response to Access' motion, Plaintiff has withdrawn the second allegation regarding credit reporting. (Docket #139 at 24 n.10). Thus, the only claim remaining in Count Two is that Access harassed Plaintiff by attempting to collect on a debt which was eliminated by operation of the statute of limitations.

Access contends that Plaintiff has not offered sufficient evidence of harassment. Courts have had little occasion to discuss Section 427.104(1)(h), and those which do give it only passing treatment. *Andersen v. State Collection Serv., Inc.*, 822 N.W.2d 737, 2012 WL 4094271, at *4 (Wis. Ct. App. Sept, 19, 2012) (three sentences to address *pro se* litigants generalized allegations of harassment); *Weber v. Great Lakes Educ. Loan Servs., Inc.*, No. 13-CV-291, 2013 WL 3943507, at *5 (W.D. Wis. July 30, 2013) (contacting a consumer's attorney after being notified that the consumer was represented

---

Court denied her request because it came too late to keep the current trial date. (Docket #62). The Court noted that "Plaintiff remains free to pursue Access for [ACS]'s conduct, as she insists that [ACS] was at all times acting as Access's agent, . . . or she may simply file a separate action against [ACS]." *Id.* at 2. The first clause of that sentence was not a stamp of approval on Plaintiff's agency theory, but merely an acknowledgment that she advanced it. Now that the parties have marshalled all of the applicable law and evidence they could muster, the Court can now conclude that the first option is not viable. Even if Plaintiff could have reasonably relied on the Court's earlier statement, it specifically referenced another option, namely a separate lawsuit against ACS. Given the arguments in this case, the Court assumes that one was not pursued, but that was Plaintiff's choice to make.

"appears an appropriate if not laudable step for a collection agent to take and is certainly not 'harassing conduct.'"). The Court can be sure, however, that harassment must be assessed objectively. Wis. Stat. § 427.104(1)(h) (collector cannot "[e]ngage in other conduct which can *reasonably* be expected" to harass) (emphasis added); *Assoc. Fin. Servs. Co. of Wis. v. Hornik*, 336 N.W.2d 395, 397 (Wis. Ct. App. 1983).[12]

The only helpful analogy, and a marginal one at that, comes from *Hornik*. There, the Court of Appeals assessed whether a collector's conduct was harassing under a different subpart of Section 427.104, which proscribes "[c]ommunicat[ing] with the customer . . . with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer." Wis. Stat. § 427.104(1)(g); *Hornik*, 336 N.W.2d at 397-99. At a bench trial, the trial court found that a collector making four to five calls per month to a delinquent debtor was not harassment. *Hornik*, 336 N.W.2d at 398. *Hornik* held that this finding was not clearly erroneous. *Id.* at 399.

In her brief, Plaintiff claims that the following conduct could be considered harassing:

> The record shows that Ms. Strohbehn retained counsel to ask Access Group to cease their collection efforts; and that Access Group wouldn't even bother to have someone from their legal department contact her attorney. She talked to collection employees on the phone and was subjected to the actions of a debt collector hired by Access Group.

---

[12]Plaintiff suggests that the harassment should be assessed from the perspective of "a person in Plaintiff's position and career[.]" (Docket #139 at 24). She cites only *Hornik* for this proposition, which says nothing of the sort. Rather, any alleged harassment must be viewed from the perspective of an average, reasonable consumer—the person protected by the WCA—and not modified to fit Plaintiff's "position [or] career."

(Docket #139 at 24-25). This is the entirety of the allegedly harassing conduct.[13] There are two problems with Plaintiff's argument. First, Plaintiff's brief does not cite where the facts supporting the first sentence may be found, and the Court cannot locate them. *See generally* (Docket #140 and #146).

Second, taking the second sentence at face value, it does not amount to harassment. Access made far fewer calls than the collector in *Hornik*, and WWR's letters were sent to Plaintiff's lawyers in accordance with her wishes.[14] Plaintiff does not explain how this generic debt collection activity rose to the level of harassment, beyond her belief that the debts were not owed. However, Access genuinely disagreed, and only as of this ruling has the issue been definitively resolved. Access cannot be faulted for maintaining its position on the hotly-disputed validity of Plaintiff's debts prior to this point. On the facts marshalled by Plaintiff, no reasonable jury could find that a reasonable person would have been harassed by Access' conduct. Access is, therefore, entitled to summary judgment on Count Two.

3.      **MOTIONS TO STRIKE**

Two weeks before filing her motion for summary judgment, Plaintiff moved to strike certain affirmative defenses from Access' answer. (Docket

---

[13]The remainder of Plaintiff's factual references in this section of her brief go to her damages on the harassment claim, not liability. *See* (Docket #139 at 25). Plaintiff also suggests that more support for the harassment claim can be found "though this entire brief." *Id.* She cannot send the Court on a scavenger hunt to find evidence and argument favorable to her. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[14]This generously assumes that WWR's collection activity can be attributed to Access. Plaintiff has not shown that an agency theory is available under Section 427.104(1)(h).

#84). She submitted a similar motion directed at WWR's answer a few days later. (Docket #85). The motion directed to Access must be denied as moot in light of the Court's rulings on summary judgment.

As to WWR, Plaintiff seeks to strike Defendants' affirmative defenses pursuant to FRCP 12(f). The Rule provides that "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" may be stricken from a pleading. Fed. R. Civ. P. 12(f). The standard of review applied to such motions is incredibly deferential. Motions to strike answers and affirmative defenses are not favored "and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Williams v. Jader Fuel Co., Inc.*, 944 F.3d 1388, 1400 (7th Cir. 1991). In considering a motion to strike, the Court "views the challenged pleadings in the light most favorable to the non-moving party. Moreover, motions to strike will generally be denied unless the portion of the pleading at issue is prejudicial." *McGinn v. J.B. Hunt Transport, Inc.*, No. 10-CV-610-JPS, 2010 WL 4363419, at *1 (E.D. Wis. Oct. 27, 2010) (citation omitted).[15]

These standards dictate that WWR's true affirmative defenses must remain. These are its first (damages caused by independent third parties), second (failure to mitigate damages), third (contributory negligence), and fifth (bona fide error). (Docket #78 at 13). Though Plaintiff chides WWR for not including additional factual allegations along with the defenses, she

---

[15]Plaintiff appears to believe that the plausibility standard announced in *Iqbal* applies to an assessment of affirmative defenses. (Docket #85 at 2-4). The Seventh Circuit has not so held, and the Court is not free to ignore *Williams*, which is on-point and has not been overruled. *See Gatx Corp. v. Assoc. Energy Servs., LP*, 16-C-340, 2016 WL 4378971, at *3 (N.D. Ill. Aug. 17, 2016).

does not address the *Williams* standard at all. Plaintiff's failure to do so means that the Court must deny her motion with respect to those defenses; she has not even attempted to establish that there are no provable facts which could support them. Further, Plaintiff alleges no prejudice arising from the defenses, other than a general desire to remove "clutter" from the case. (Docket #122 at 2). Plaintiff can dispute the merits of any of these defenses should they be raised at trial, and if they are indeed completely without a factual basis, sanctions offer her a remedy. Fed. R. Civ. P. 11(b).

Plaintiff is correct, however, that WWR's sixth and seventh "affirmative defenses" are not true defenses at all. The sixth alleges that Plaintiff's claims are frivolous if the Consolidation Payment did not extinguish the loans. *Id.* The seventh says that Plaintiff "fails to meet the statutory requirements . . . to recover punitive damages" under the FCRA and WCA. *Id.* at 14. Neither of these assertions qualify as affirmative defenses because they attack, rather than admit, certain elements of Plaintiff's *prima facie* case. *See Riemer v. Chase Bank USA, N.A.*, 274 F.R.D. 637, 639 (N.D. Ill. 2011) ("An affirmative defense is one that admits the allegations in the complaint, but avoids liability, in whole or in part, by new allegations of excuse, justification or other negating matters."). Both of these defenses are stricken.

4. **CONCLUSION**

Plaintiff has shown that her student loans debts were extinguished, in accordance with the terms of the loan agreements and the applicable statute of limitations, in 2013. Thus, Defendants' complained-of collection activity was directed at non-existent debts. However, Plaintiff can no longer proceed against Access on any claim for reasons independent of the validity of the debts. Thus, the only claims remaining for trial are those against

WWR. Though Access is entitled to dismissal from this matter, its motion for sanctions will remain pending. As the Court stated in its November 8, 2017 order, that motion will be addressed at the conclusion of the trial. (Docket #161).

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to strike Defendant Access Group, Inc.'s affirmative defenses (Docket #84) be and the same is hereby **DENIED as moot**;

**IT IS ORDERED** that Plaintiff's motion to strike Defendant Weltman, Weinberg & Reis Co., L.P.A.'s affirmative defenses (Docket #85) be and the same is hereby **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that Defendant Weltman, Weinberg & Reis Co., L.P.A.'s sixth and seventh affirmative defenses (Docket #78 at 13-14) be and the same are hereby **STRICKEN**;

**IT IS FURTHER ORDERED** that Plaintiff's motions to seal (Docket #90 and #134) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's expedited motion for an extension of time (Docket #124) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment (Docket #87) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Weltman, Weinberg & Reis Co., L.P.A.'s motion for summary judgment (Docket #94) be and the same is hereby **GRANTED IN PART** and **DENIED IN PART** in accordance with the terms of this Order;

**IT IS FURTHER ORDERED** that Defendant Access Group, Inc.'s motion for summary judgment (Docket #100) be and the same is hereby **GRANTED IN PART** in accordance with the terms of this Order; and

**IT IS FURTHER ORDERED** that Defendant Access Group, Inc. be and the same is hereby **DISMISSED** from this action.

Dated at Milwaukee, Wisconsin, this 14th day of November, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge