# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ERIN STROHBEHN,<br><br>                 Plaintiff,<br><br>v.<br><br>WELTMAN WEINBERG & REIS CO. LPA,<br><br>                 Defendant. | Case No. 16-CV-985-JPS<br><br>**ORDER** |

**1.      INTRODUCTION**

On November 14, 2017, the Court granted Plaintiff's motion for partial summary judgment. (Docket #164 at 7–13). In the same order, the Court dismissed former defendant Access Group, Inc. ("Access") from this action. *Id.* at 14–19. This action concluded when Plaintiff accepted an offer of judgment from the remaining defendant, Weltman, Weinberg & Reis Co., LPA ("WWR"). (Docket #175). Two motions remain pending. The first is a motion for sanctions against Plaintiff and her counsel filed by Access prior to its dismissal. (Docket #151). The second is a motion for attorneys' fees and costs filed by Plaintiff and directed to WWR. (Docket #179). The Court will address the motions in turn.

**2.      MOTION FOR SANCTIONS**

On October 27, 2017, Access filed its motion for sanctions pursuant to Federal Rule of Civil Procedure 11. (Docket #151). The Court stayed the motion pending disposition of the parties' summary judgment motions. (Docket #161). Once the case concluded (at least in a trial posture), the Court

resumed briefing on the sanctions motion. (Docket #175). That briefing is now complete.

Rule 11 provides authority for the Court to sanction frivolous litigation practices. These practices include offering motions, pleadings, or briefs without a reasonable inquiry into the facts underlying them, filing documents for purposes of delay or to increase litigation costs, presenting legally baseless arguments, and asserting or denying facts without evidentiary support. *See* Fed. R. Civ. P. 11(b)(1)–(4). If sanctions are appropriate, the Court is "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," and may include monetary or non-monetary directives. *Id.* (c)(4).

Whether to impose sanctions, and what form they should take, is in large measure left to the Court's discretion. *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883 (7th Cir. 2017); *Fries v. Helsper*, 146 F.3d 452, 459 (7th Cir. 1998) (noting that district courts have "significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person(s).") (citation omitted). The primary goal of sanctions under Rule 11 is not to reimburse the movant dollar-for-dollar, but instead to punish the violator and deter future misconduct. *See Brandt v. Schal Assoc., Inc.*, 960 F.2d 640, 645 (7th Cir. 1992).

Access accuses Plaintiff of violating Rule 11 in three ways. First, until nearly the end of this case, Plaintiff asserted that she had paid her student loans off completely. On that basis, Plaintiff asserted that Access was liable to her for its unlawful efforts to collect that debt. Access says she should have known that this was not true, and could have investigated this

position more thoroughly prior to filing her complaint. Second, Plaintiff also failed to investigate her allegations regarding Access' conduct damaging her credit score. Access believes that she has never had any proof that this assertion was true. Finally, Access contends that Plaintiff's counsel violated Rule 11 by serving discovery responses in Plaintiff's name without having her first verify them.[1]

Plaintiff opposes each of Access' contentions. First, she claims that she withdrew the offending "paid in full" contention within the twenty-one day "safe harbor" period provided by Rule 11. *See id.* (c)(2); (Docket #149). Second, Plaintiff argues that the damage to her credit score was supported by expert testimony. Third, Access' request for sanctions related to her discovery responses is specifically excepted from Rule 11's purview. Fed. R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37."). Finally, her counsel generally describes the investigations he conducted into the various issues complained-of in Access' motion, in an effort to show that his inquiries were reasonable. Plaintiff also curiously requests her fees without noting compliance with Rule 11's requirements. *See* (Docket #177 at 11). Access replies that Plaintiff's withdrawal of the "paid in full" contention was improper, regurgitates much of its other arguments, and opposes the request for fees.

The Court's discretion dictates that Access' motion must be denied without wading into the minutiae of the parties' arguments. Suffice to say

---

[1] In its opening brief, Access also claimed that Plaintiff offered a frivolous argument regarding the statute of limitations. (Docket #152 at 15–17). In light of the Court's summary judgment decision, which ruled in Plaintiff's favor on the statute of limitations issue, Access has withdrawn its request for sanctions on that point. (Docket #184 at 3 n.1).

that, as with their previous conduct in this case, both sides offer arguments with some apparent merit, but detract substantially from their own positions with petty attacks on the other. *See* (Docket #164 at 3 n.2). Indeed, the Court has been surprised by the lack of professionalism from counsel for Plaintiff *and* Access in litigating this matter. Though every case has equal dignity, other matters assigned to this branch of the Court have involved much more profound issues of personal rights and far larger amounts in controversy. Even in those higher-stakes cases, counsel remained professional, courteous, and cooperative, while at the same time offering zealous advocacy for their clients. That behavior was wholly absent from this case. Counsel for Plaintiff and Access determined that in this straightforward case, no quarter should be asked or given, and that every hill was worth dying on. This was beyond inappropriate. No sanctions will be imposed on either side save for the admonishments they have received herein.

3.  **MOTION FOR ATTORNEYS' FEES AND COSTS**

On January 15, 2018, Plaintiff filed a motion for attorneys' fees and costs. (Docket #179). Plaintiff is entitled to such an award pursuant to the fee-shifting provisions of the FDCPA and FCRA. 15 U.S.C. §§ 1692k(a)(3), 1681n, 1681o. As with all requests for attorney's fees, the Court applies the lodestar analysis. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). The lodestar "is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended." *Id.* Once reached, the Court may "adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher v. Law Off. of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 856–57 (7th Cir. 2009). The Court must "provide a clear

and concise explanation for its award, and may not 'eyeball' and decrease the fee by an arbitrary percentage because of a visceral reaction that the request is excessive." *Id.* at 857. Plaintiff bears the burden "of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Plaintiff seeks over $113,000 in fees and costs in this case. (Docket #188 at 13–14). WWR believes she is entitled to no more than $25,000. (Docket #187 at 22). The Supreme Court holds that "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Despite the vast gulf between the parties' positions and their lengthy briefs, the Court takes this instruction to heart and will keep its fee ruling concise.

### 3.1 Lodestar

As noted above, the lodestar analysis involves setting a reasonable hourly rate and the number of hours which should have reasonably been expended to litigate the claims at issue. Those figures are multiplied to achieve the lodestar, which may then be adjusted for various reasons.

#### 3.1.1 Reasonable Hourly Rate

A reasonable hourly rate is

> one that is derived from the market rate for the services rendered. We presume that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth a good reason why a lower rate is essential.

*Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quotations omitted). The Court can apply other factors to determine an appropriate rate, include a lawyer's years of experience. *Houston v. G.C. Sec. Servs., Inc.*, 820 F.3d 855, 860 (7th Cir. 2016). If Plaintiff does not carry her burden to prove that the requested rates are appropriate, the Court may independently set a reasonable rate. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).

Plaintiff states that her counsels' billing rates are as follows: $350 per hour for Nathan DeLadurantey ("DeLadurantey"), a practitioner with approximately twelve years' experience, and $300 per hour for Heidi Miller ("Miller"), with approximately six years' experience. (Docket #181 and #181-4). Plaintiff's support for these rates consists of her counsels' averments, an affidavit from another Wisconsin-based consumer rights attorney who says DeLadurantey's rate is reasonable, and a reference to another case from this District where the court rated Miller at $300 per hour for a default judgment. *See* (Docket #181, #181-4, and #182); *Burns v. Innovative Credit Solutions LLC*, 16-CV-1012-WCG (E.D. Wis.), (Docket #11 and #14).

While the Court appreciates these materials, they give only a limited indication of how the rates fit into those prevailing in the community. There are other indicators available to help determine an appropriate billing rate. The first such indicator is counsel's own prior fee awards. In this Court, they have been awarded $250-$300 for DeLadurantey and $215-$300 for Miller. *Orosz v. Eagle Atlantic Fin. Servs. Inc.*, 12-CV-396-LA (E.D. Wis.), (Docket #10 and #12); *Burns*, 16-CV-1012-WCG, (Docket #11 and #14); *Gagliano v. State Collection Serv.*, 14-CV-1512-WED, 2016 WL 2853538, at *2 (E.D. Wis. May 13, 2016). The low end of those ranges was awarded in *Orosz*

in 2012. In May 2016, *Gagliano* set the rates at $300 for DeLadurantey and $250 for Miller. *Burns* billed Miller at $300 in October 2012. Both *Orosz* and *Burns* awarded fees in the context of a default. *Gagliano*'s rates were part of adversarial briefing, though they were ultimately not opposed by the defendant in that case.

Another helpful source for appropriate fee rates is the Milwaukee consumer lawyer fee survey. For the latest survey, conducted in 2015-16, the average hourly rate for a Milwaukee-based consumer rights attorney was $437, and the median rate was $400. United States Consumer Law Attorney Fee Survey 2015-16, *available at*: https://www.nclc.org. Finally, the Court can look to its own prior fee awards in similar cases. The Court's most recent consumer rights fee opinion was issued in June 2017. There, this Court allowed rates of $450 per hour for an attorney of twenty-three years' experience, $385 per hour for one of sixteen years' experience, and $300 for one of fourteen years' experience. *Heling v. Creditors Coll. Serv., Inc.*, 15-CV-1274-JPS, 2017 WL 2539785, at *3–4 (E.D. Wis. June 12, 2017).

WWR asserts that the Court should set DeLadurantey and Miller's rates at those awarded in *Gagliano*. The Court largely agrees. In aggregating all of the above figures, and in an effort to achieve some level of consistency, the Court finds that Plaintiff's appropriate rates are near those in *Gagliano*. The Court will therefore set DeLadurantey's rate at $300 per hour. In light of Miller's more limited experience, her reasonable rate is $220 per hour.

### 3.2.2 Reasonable Hours

Though Plaintiff is entitled to have her attorneys' bill paid by WWR, it "is not required to pay for hours that are excessive, redundant, or otherwise unnecessary." *Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012). In this vein, Plaintiff's counsel is expected to exercise "billing

judgment" when presenting their bill to the Court, by "winnowing the hours actually expended down to the hours reasonably expended." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999) (quotation omitted). In other words, "hours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party under a fee-shifting statute" like the FDCPA. *Id.* The "winnowing" process involves excluding not only hours "that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Id.* at 553.

Plaintiff's initial demand is for approximately $91,000 in fees for 276.6 hours of work. This figure is divided into $57,645 for DeLadurantey (164.7 hours) and $33,570 for Miller (111.9 hours). The Court concludes that many of these hours were unreasonably expended. The essence of Plaintiff's approach in this case was to over-litigate without regard to what would be reasonable to bill to a fee-paying client. The most glaring fact supporting this view is that this case did not proceed to trial. The Court cannot fathom how a fee-paying client would ever allow their attorneys to bill approximately 270 hours over a year-and-a-half prior to trial. Indeed, Plaintiff's claimed hours would be extraordinarily high even if the case had been tried. *See Gagliano*, 2016 WL 2853538, at *2–4 (a survey of fee awards in eight jury-tried FDCPA cases revealed reasonable hour calculations averaging 160 hours). For a recovery of $7,000, which Plaintiff describes as "wildly successful," Plaintiff's claimed hours are disproportionate. (Docket #188 at 9–10).

The Court's conclusion is further buttressed by reference to a number of WWR's specific concerns with the hours claimed by Plaintiff's

attorneys. Plaintiff obtained the services of two experts and billed over fifteen hours related to them. Though the parties dispute how relevant the experts' opinions were to WWR's liability, it is clear to the Court that Plaintiff spent too much time with the experts, particularly when they gave no testimony at a deposition or trial. Similarly, Plaintiff expended great energies pursuing discovery and depositions for anyone she could find with marginally relevant information. As for dispositive motion practice, Plaintiff's attorneys spent over sixty-five hours litigating her own and WWR's motions. By rough calculation, this puts the bill at over one-and-a-half hours *per page* of argument her attorneys produced on the matter. Finally, by the time this matter was settled, Plaintiff's attorneys had already billed over twenty-six hours for trial preparation. This was a week before the final pre-trial report was due, and more than two weeks before trial was set to begin. At that rate, taking the case to and through trial might have increased the bill by another hundred hours.

Again, a fee-paying client would not accept such vigorous litigation tactics in light of the value of the case. This is especially true in light of Plaintiff's attorneys' extensive experience as consumer rights litigators. They are receiving an hourly rate commensurate with that experience. By the same token, they cannot charge their client, or WWR by way of the instant motion, for the hours a relative novice might require to address the same tasks.

In the end, excessiveness pervades Plaintiff's fee bill. The Court declines to waste its time by addressing this problem with respect to each individual line item of Plaintiff's thirty-eight-page bill. *See Divane v. Krull Elec. Co.*, 319 F.3d 307, 316–17 (7th Cir. 2003). Rather, in light of the nature and history of this case, and the experience of Plaintiff's attorneys, the Court

believes that no more than 180 hours could have been reasonably expended in litigating this matter. While this is a substantial reduction, it is still proportionally greater than other fee awards in consumer rights cases which went through a jury trial. *See Gagliano*, 2016 WL 2853538, at *2–4; *Heling*, 2017 WL 2539785, at *4–5. When multiplied by the reasonable rates discussed above, the final lodestar figure becomes $48,173.76.[2]

By making this reduction, the Court does not suggest that Plaintiff's attorneys did not actually work for each of the hours they have presented. However, the Court is not charged with compensating them for their actual work, but only their work that is both reasonable and necessary. The Court itself is subject to reasonable time constraints on its work in light of its duties to the parties and the public, and the lawyers practicing before it must adhere to the same standard.

### 3.3 Lodestar Adjustment

Plaintiff is entitled to an award of reasonable attorney's fees, and "[t]here is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett*, 664 F.3d at 639 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). Nevertheless, "[i]n setting a reasonable fee, the district court must determine whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.' *Hensley*, 461 U.S. at 434. A plaintiff who achieves 'excellent results' should receive the entire lodestar, but where 'a plaintiff has achieved only partial or limited success,' the lodestar 'may be an excessive amount.' *Id.* at 435–36." *Montanez*, 755 F.3d at 556. The degree of success is determined "not only in the amount of the

---

[2]The ratio of hours attributed to each biller has been maintained in arriving at this figure.

recovery but also in terms of the principle established and the harm checked." *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997).[3]

Plaintiff's overall degree of success is best viewed by assessing her individual claims. She asserted four causes of action against WWR, one pursuant to the FDCPA, one pursuant to the FCRA, and the remaining two pursuant to Wisconsin law. (Docket #164 at 7). The basis for each of these claims was the same: Plaintiff's contention that she did not owe the amounts WWR sought to collect. *Id.* at 7–8. This position was, in turn, founded on two independent theories. *Id.* at 8 n.6. The first was that Plaintiff in fact paid the alleged debts off in their entirety long ago. *Id.* The second was that even if the debts were not fully paid, the statute of limitations had run on them, and thus they were uncollectable. *Id.*

---

[3]These statements of law reflect the relevant Supreme Court precedent. The *Hensley* Court provided twelve specific factors which may aid in making a proper lodestar adjustment:

> 1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3. These factors are generally subsumed within setting the lodestar itself, as is true in the instant case. *Anderson*, 578 F.3d at 544. In *Farrar*, the Supreme Court emphasized "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436).

Discovery in this matter concerned both theories. However, as noted above, Plaintiff abandoned the first theory during the summary judgment stage, apparently recognizing that it could not be sufficiently proven. *Id.* WWR argues that the lodestar should be reduced by fifty percent in recognition of this "lack of success." (Docket #187 at 16). The Seventh Circuit instructs that "[n]o algorithm is available for adjusting a lodestar to reflect partial or limited success. When the judge cannot easily separate the successful and unsuccessful work, there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing claims." *Montanez*, 755 F.3d at 557 (citations and quotations omitted).

The Court agrees that a reduction is appropriate, but not one as extreme as proposed by WWR. Plaintiff, through WWR's acquiescence, obtained judgment on each of her claims against it. (Docket #176). She also received a substantial monetary award. *Id.* Nevertheless, the paid-in-full contention was the centerpiece of Plaintiff's case until discovery failed to support it. The statute of limitations argument was a backup plan that the Court found meritorious. In the Court's view, Plaintiff was partially successful, in that she did not prove all of what she set out to. This warrants only a minor reduction, however. The Court concludes that an appropriate, across-the-board reduction for Plaintiff's partial success is five percent, or $2,408.69.[4]

---

[4]WWR suggests that the Court should apply Wisconsin law on attorney's fees because Plaintiff presented two state law claims against it. (Docket #187 at 18–19). WWR's argument on the point is barely more than one page and cites no federal court opinions adopting such a position. *Id.* Because Plaintiff's fees are being awarded pursuant to federal statutes, and without contrary precedent, the Court declines WWR's invitation to apply Wisconsin law to this fee dispute. In any

Finally, the lodestar is subject to an upward adjustment for Plaintiff's expense in litigating the fee issue. The Seventh Circuit holds "that time spent in establishing the entitlement to and amount of the fee is compensable." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (7th Cir. 2008). As with the above lodestar analysis, the reasonableness of the fee is the overarching inquiry. *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 893–94 (7th Cir. 2001). One factor in this determination is a comparison between the hours requested for the merits litigation and the hours spent preparing the fee petition. *Id.* Despite disputing numerous specific areas of Plaintiff's attorneys' bill, WWR offers no complaint about the time spent preparing the fee motion. As to the motion itself, Plaintiff requests approximately 8.2 hours of DeLadurantey's time. (Docket #181-1 at 24). This time is already contained within Plaintiff's initial fee request and has been reduced accordingly. For her reply in support of the motion, Plaintiff seeks an additional six hours, also at DeLadurantey's rate, for a total of $2,100. Applying the Court's reasonable rate for his time, however, results in a fee of $1,800. This amount must be further reduced to be proportional to the primary fee award. This consideration dictates that Plaintiff be awarded $915.30 for her fee petition reply brief.

### 3.4 Costs

Plaintiff also seeks costs, pursuant to the FDCPA, FCRA, and Federal Rules of Civil Procedure, in the amount of $23,306.36. (Docket #180 at 13–14); *see also* 15 U.S.C. §§ 1692k(a)(3), 1681o(a)(2), 1681n(a)(3). While the Court could assess costs in the first instance, 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1), prudence counsels that the parties follow the standard

---

event, Plaintiff's fee award has been adjusted to an amount the Court determines is reasonable.

procedure for seeking costs. The Court will, therefore, deny Plaintiff's request for costs without prejudice. If she wants costs to be taxed, she should first seek relief from the Clerk of the Court. The parties should only appeal to this Court (if they believe it necessary) after the Clerk has made his determination.

### 3.5 Conclusion

For the reasons explained above, Plaintiff's motion for attorneys' fees will be granted in the amount of $46,680.37.

Accordingly,

**IT IS ORDERED** that Access Group, Inc.'s motion for sanctions (Docket #151) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for attorneys' fees and costs (Docket #179) be and the same is hereby **GRANTED in part** and **DENIED in part** in accordance with the terms of this Order;

**IT IS FURTHER ORDERED** that Defendant Weltman, Weinberg & Reis Co., LPA shall pay to Plaintiff the amount of $46,680.37 as attorneys' fees; and

**IT IS FURTHER ORDERED** that Plaintiff's request for costs be and the same is hereby **DENIED** without prejudice. If Plaintiff seeks taxing of costs, she must file a bill of costs with the Clerk of the Court in accordance with this District's procedural rules.

Dated at Milwaukee, Wisconsin, this 27th day of April, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge